Aug. 11,
1876. INSLEE *v.* LANE.

The consignors of goods, sold upon credit, sent them by rail to the place of destination. Upon their arrival, the car containing the goods was set out upon a side-track, where, according to custom, the goods were to be taken from the car immediately by the consignees, or, if not so taken, were liable to be charged $2 a day demurrage. There was no agreement or understanding between the carriers and the consignees that the goods should be held by the former as warehousemen, or as agents of the consignees.

The consignees, who were insolvent, absconded before the arrival of the goods. The consignors first learned of the insolvency of the consignees after the goods were forwarded. A general truckman, who had a standing order from the consignees to take any goods he might find at the railroad station and bring them to the consignees' store, was informed by an agent of the carriers of the arrival of the goods, but did not remove them. The next day the goods were attached by the defendant. The truckman was appointed keeper of the goods by the attaching officer, and removed them under his directions. *Held,* the consignors' right of stoppage *in transitu* was not terminated at the time of the attachment, and they might maintain trover against the attaching officer for the value of the goods.

FROM CHESHIRE CIRCUIT COURT.

TROVER, for 60 M pine shingles, May 16, 1874. The plaintiffs, who were engaged in the lumber business at Port Huron, Mich., sold the shingles in question upon credit to G. W. Barnes & Co., of Keene, and on the same day shipped them by railroad to the above named firm. The shingles arrived at Keene in the forenoon of May 20, over the Cheshire Railroad, and the car in which they came was immediately run out by the servants of that corporation upon the " Surry track," where bulky freight of that description was delivered, to be taken from the cars by the consignees immediately, or liable to be charged $2 a day demurrage. Several days before the arrival of the shingles at Keene, the only person who had ever pretended to represent G. W. Barnes & Co. during the business career of that firm in Keene (which was of about six weeks' duration) had absconded, leaving no visible property behind; and no question was made by the defendant at the trial but that said firm was insolvent, and that the plaintiffs first learned of their insolvency after the goods were shipped.

One Howland, a general truckman, had previously moved some goods, arriving by railroad, from the station to the place of business of Barnes & Co., and had a standing order to take anything he found

there for them, and bring it to the store.   On the day of the arrival of the shingles, the agent of the railroad told Howland there was a car-load of shingles for Barnes & Co.   The agent knew that Barnes had left town; and Howland testified that several days before he had car-ried some sugar from their place of business to the railroad station, and that nothing was left in the store after the sugar was thus removed.   Howland did nothing by way of taking possession of the shingles on behalf of Barnes & Co., and there was no evidence of any authority in him to act as their agent for that purpose.   But, upon being informed of the arrival of the shingles, he went to the Cheshire house, where the representative of Barnes & Co. had boarded while in town, to make inquiries for him.   The next day the shin-gles were attached in a writ in favor of Morgan J. Sherman against Barnes & Co.   Howland was made keeper over them, and employed to remove them by the deputy of the defendant, who served the writ.   At the trial it was admitted by the defendant that Howland was not act-ing as agent of Barnes & Co. in taking possession of the goods and moving them, all he did being done by direction of the officer.   The shingles were sold on that writ, and this suit is to recover their value. The only question at the trial was, whether the plaintiffs' right of stoppage *in transitu* was gone at the time the attachment was made.

The defendant requested the court to charge the jury (1) that when the car containing the shingles was run out upon the track where said freight was delivered by the railroad, and Howland was informed of it, the transit was terminated, and the rights of the plaintiffs of stoppage as consignors was gone; (2) or, if the shingles had been there at the place of delivery a sufficient length of time to be removed before they were taken away by the officer, the right of stoppage *in transitu* was ter-minated; (3) or, if they came into the actual and voluntary possession of the truckman before they were claimed by the plaintiffs, although under the direction of the officer, their right of stoppage *in transitu* was terminated; (4) that the right of stoppage *in transitu* was termi-nated as soon as the liability of the carrier, as such, was terminated, either by the arrival of the goods at their final destination, by remain-ing there a sufficient time to be removed by the truckman after being informed of their arrival, or by being removed by him, although in doing so he was acting as the servant of the defendant's deputy.

The court declined to give these instructions, but did instruct the jury that the plaintiffs' right to stop the goods *in transitu* would con-tinue until they came to the hands of the consignees, Barnes & Co. ; that the possession of Barnes & Co., which would be sufficient to ter-minate that right, might be actual or constructive, and instructions were given as to what might constitute constructive delivery, to which no exception was taken ; that the right of stoppage in the plaintiffs would not be terminated with the liability of the carrier, as such, un-less there was an understanding or agreement between the railroad and Barnes & Co. that they should be held by the railroad as warehousemen or agents of Barnes & Co., of which there was no evidence.

To these instructions the defendant excepted. Transferred by LADD, J.

*Lane,* for the defendant.

1. The facts stated in the case, we contend, constituted a delivery which terminated the consignors' right of stoppage *in transitu.* They had arrived at the end of their final destination, and were placed by the carrier at the place fixed and agreed upon by all the parties in interest, as consignor, carrier, or consignee, for the use, benefit, and control, and under the dominion of the consignee as his property. This seems to be the doctrine as laid down by the highest authorities on the subject. 2 Kent Com. 544, 545; 2 Pars. Con. 482; *Dixon* v. *Baldwin,* 5 East 175 ; *Atkins* v. *Colby,* 20 N. H. 154. This doctrine seems to draw a line as to the rights of the consignor, where the natural definition of the term imports it should be drawn, and where it allows of a comparatively easy determination and application.

2. The carrier's liability, as such, closed when he had delivered the goods at the agreed place, and sufficient time had elapsed (1) after their arrival, or (2) after notice of their arrival to the consignee, to enable him to examine and remove them. In the present case the carrier was under no other or further duty to any of the parties as to the goods, by agreement or otherwise, because they had been actually or constructively delivered to the consignee. *Smith* v. *Railroad,* 27 N. H. 86.

This fact, we claim, shows that they had arrived at their final destination, and were under the dominion and control of the purchaser as such.

3. The goods had arrived where the consignee might have taken them, and where his truckmen might have taken them for him, and where, therefore, the consignee's creditor might also take his rights to them. A creditor can go for his debtor's property wherever he can go himself, and in many instances where his debtor cannot legally enforce a claim.

*Wheeler & Faulkner,* for the plaintiffs.

No authority can be found, either in text-books or reported cases, tending in any way to sustain the prayer for instructions.

1. If the vendees themselves had been informed of the arrival of the shingles, and that they had been run out upon the side track, that would not have terminated the transit, or the right of the vendors to retake. Such information would not be constructive delivery ; but, in this case, the information was imparted to one who was in no sense the agent of the vendees, and who could affect the rights neither of the vendors nor vendees.

2. The vendees could acquire no rights as against the vendors, by any neglect on the part of either. This request was, in fact, a request to instruct the jury that neglect to deliver, or to take possession, would be equivalent to delivery and possession.

3. In taking possession of the shingles, it is admitted that the truck-man acted under the direction of the officer, and, of course, after the attachment. The defendant might, with equal propriety, have asked the court to instruct the jury that, if the officer took possession of the shingles before they were claimed by the plaintiffs, their lien was terminated.

4. The instruction asked for, in the fourth place, is directly opposed to the whole current of authorities upon this subject. Nothing is better settled, than that the continuance of this equitable lien of the vendor is wholly independent of the carrier's liability. Even if the goods had been deposited in a bonded warehouse, or in the custom-house, awaiting the payment of duties by the vendees, or upon a general wharf, the right to retake the goods still remains, although the carrier's liability is wholly terminated.

5. We think that the jury might properly have been instructed that there was no evidence of a delivery to Barnes & Co., and we fail to see what objection can be made by the defendant to the instructions actually given.

Barnes & Co. had absconded more than a week prior to the arrival of the goods. They had left no agent authorized to receive or accept for them, nor any place in which they could be deposited. The goods were still in the hands of the carriers, in their cars, upon their side track, ready for delivery to any person authorized to receive, but undelivered, when the defendant attached them. Whether their liability as carriers was terminated or not is immaterial, as they had assumed no new relation by virtue of any contract or agreement with the vendees. If by operation of law they had ceased to be liable as carriers, but had become liable as depositaries, they were depositaries for the benefit of the vendors, and not for that of the vendees, who had abandoned them.

The right of stoppage *in transitu*,—in no way dependent upon or connected with the rights or liabilities of the carrier,—can be terminated only by delivery, actual or constructive, at the place of final destination.

Of the innumerable decisions sustaining, in every particular, the rulings of the court, we deem it necessary to cite only the following : 2 Kent Com. 540–552 ; 1 Pars. Con. 476–490 ; *Stubbs* v. *Lund*, 7 Mass. 473 ; *Williams* v. *Moore*, 5 N. H. 235 ; *Clark* v. *Draper*, 19 N. H. 419 ; *Atkins* v. *Colby*, 20 N. H. 154 ; *Reynolds* v. *Railroad*, 43 N. H. 580, and cases cited ; *Foster* v. *Frampton*, 6 B. & C. 107 ; *Mottram* v. *Heyer*, 5 Denio 629 ; *Western Trans. Co.* v. *Hawley*, 1 Daly 327.

*Foster, C. J., C. C. Stoppage *in transitu* is the right which arises to an unpaid vendor to resume the possession, with which he had parted, of goods sold upon credit, before they come into the possession of a vendee who has become insolvent, bankrupt, or pecuni-

---

* Ladd, J., did not sit.

arily embarrassed. The term "insolvent," when it relates to the right of stoppage *in transitu*, means a general inability to satisfy obligations, evidenced by stopping payment. In such a case the vendor is allowed to countermand delivery before or at the place of destination, and to resume the possession of the goods, according to that equitable principle in the law of contract by which one party may withhold on the other's becoming unable to give performance. It is nothing more than the extension of the right of lien which by the common law the vendor has upon goods for the price, originally allowed in equity, and subsequently adopted as a rule of law. The right is said to be favored and encouraged by courts of law for the purposes of justice, and for the solid reason " that the goods of one man should not be applied in payment of another man's debts." 2 Kent Com. 540 ; 1 Pars. Con. 595 ; Houston on Stoppage in Transitu 1–3 ; *Atkins* v. *Colby*, 20 N. H. 154.

The essential ground of the right of lien is possession ; that of stoppage *in transitu* is non-delivery to the vendee. There may doubtless be a valid constructive delivery without actual tangible possession by the vendee,—and " in the variety and extent of dealing, which the increase of commerce has introduced, the delivery may be presumed from circumstances, so as to vest a property in the vendee. A destination of the goods by the vendor to the use of the vendee,—marking them or making them up to be delivered, or removing them for the purpose of being delivered, may all entitle the vendee to act as owner, to assign, and to maintain an action against a third person, into whose hands they have come. But the title of the vendor is never entirely divested till the goods have come into the possession of the vendee. He has, therefore, a complete right, for just cause, to retract the intended delivery, and to stop the goods *in transitu.*" Lord LOUGH-BOROUGH in *Mason* v. *Lickbarrow*, 1 H. Bl. 364 ; *Williams* v. *Moore*, 5 N. H. 235.

In the case of *Hunter* v. *Beale*, cited in *Ellis* v. *Hunt*, 3 Term 466, Lord MANSFIELD was clearly of opinion that, though the goods might be legally delivered to the vendee for many purposes, yet as for this purpose there must be an absolute and actual possession by the bankrupts ; they must have come to the corporal touch of the vendees,—otherwise they may be stopped *in transitu.* But in *Ellis* v. *Hunt*, Lord KENYON said,—"As to the necessity of the goods coming to the corporal touch of the bankrupt, that is merely a figurative expression, and has never been literally adhered to. For there may be an actual delivery of the goods without the bankrupt seeing them,—as, a delivery of the key of the vendor's warehouse to the purchaser." And in *Dixon* v. *Baldwin*, 5 East 184, Lord ELLENBOROUGH also disapproved of the ruling of Lord MANSFIELD in *Hunter* v. *Beale*, saying,—" The question is, whether the party to whose touch the goods actually come, be an agent so far representing the principal as to make the delivery to him a full, effectual, and final delivery to the principal, as contradistinguished from a delivery merely to a person acting as a carrier or means of conveyance to or on account of the principal, in a mere course

of transit towards him." 1 Pars. Con. 603, and cases cited. So, demanding and marking the goods by the vendee's agent at the inn where the goods arrived at their destination, has been considered a constructive delivery, defeating the right of stoppage *in transitu. Ellis* v. *Hunt,* before cited.

But delivery to a mercantile house merely for transmission to the vendee by a forwarding house does not take away the right of stoppage. *Hays* v. *Morrill,* 14 Pa. St. 48.

The possession of a carrier is not such actual possession of the vendee or consignee as takes away the right of stoppage. "This," said LAWRENCE, J., in *Bothlingk* v. *Inglis,* 3 East 395, " has been repeatedly determined."

And if goods are shipped for a particular port, or forwarded to a particular place, thence to be sent by another ship or other conveyance to the vendee, and a wharfinger or a middle-man receives them on their first arrival for the purpose of forwarding them to the vendee, the vendor's right of stoppage continues until the goods have reached the possession of the vendee. *Mills* v. *Ball,* 2 Bos. & Pull. 457 ; *Ellis* v. *Hunt* and *Atkins* v. *Colby,* before cited.

In such circumstances it might happen that it would be proper and necessary to submit to the jury such questions as whether the wharfinger or middle-man received the goods as the vendee's agent, to take possession of them for his benefit as owner, or as his agent only to forward them to him, or to keep them for the vendor. Houston on Stoppage in Transitu 122 ; *Reynolds* v. *The Railroad,* 43 N. H. 580.

If the wharfinger or middle-man, or any other person, be the actual agent of the vendee, beyond the duty and position of such person as a mere wharfinger, carrier, or forwarder, the possession of such agent would be as effectual a bar to the right of stoppage as the actual manual possession of the vendee. *Dixon* v. *Baldwin,* before cited ; *Harman* v. *Anderson,* 2 Camp. 243 ; *Lucas* v. *Dorien,* 7 Taunt. 279 ; *Atkins* v. *Colby,* before cited ; Houston on Stoppage in Transitu 114.

Applying these principles, what is the condition of the case before us ? It is conceded that the vendees were insolvent, and that this fact first became known to the plaintiffs after the shipment of the goods. It is not contended (and upon the facts it cannot be) that the Cheshire Railroad were the agents of the vendee for the purpose of receiving the delivery or possession of the goods. While standing upon the Surry track they were still in the possession of the carrier, undelivered, and in a state of detention by the railroad, according to their custom and contract with reference to demurrage. Demurrage is a condition of detention and delay beyond the ordinary time for unloading or delivery. See Bouv. Law Dic.

In this condition of the goods it is not claimed that there was any understanding or agreement that the railroad corporation should hold them as warehousemen or agents of Barnes & Co. The case of *Smith* v. *The Railroad,* 27 N. H. 86, cited by the defendants, is therefore not in point. *Nayler* v. *Dennie,* 8 Pick. 198.

Howland was a " general truckman," and notwithstanding he had had a general order to take anything he might find for Barnes & Co. at the depot and bring it to the store, that order cannot be said to have continued after the store had been abandoned and all its contents removed, the traders having absconded. Moreover, the case finds that there was no evidence of any authority in Howland to act as the agent of Barnes & Co. for the purpose of taking possession of the shingles; and it was admitted at the trial that in taking possession of them and removing them he acted under the direction of the attaching officer, and not as agent of Barnes & Co. Barnes & Co. having no agent to receive or forward the goods, having themselves departed to parts unknown, the ultimate destination of the goods being unaccomplished and unknown, it can, in no sense, be considered that the goods had come to the possession of the vendees.

Such being the facts as proven or admitted, and no exception being taken to the instructions of the court upon the subject of constructive delivery and possession, I fail to discover any error in the proceedings of the court below, and am clearly of opinion there should be judgment upon the verdict.

The case mainly relied upon by the defendants,—*Dixon* v. *Baldwin*, before cited,—is very clearly distinguishable from the present in this respect : that the consignees had specially appointed the Metcalfes their agents to receive the goods from the carriers at Hull, and forward them to an ultimate destination prescribed by the consignees; and in that case, upon the principles which I have stated, the transit was properly regarded as terminated, so far as the vendors were concerned, upon the intervention of the Metcalfes at Hull.

CUSHING, C. J., and SMITH, J., concurred.

*Exceptions overruled.*