HALL & *a.* v. DIMOND.

The right of stoppage *in transitu* is terminated when the goods are delivered to the buyer, or possession, actual or constructive, is taken by him.

The carrier's change of character into that of an agent to keep the goods for the buyer is not inconsistent with his right to retain the goods in his custody till his lien for freight is satisfied.

REPLEVIN, for goods bought of the plaintiffs in Boston, and by them shipped to one Sawyer at Penacook, at which place they were attached by a creditor of Sawyer's while remaining in the freight-house of the railroad.   The plaintiffs claimed to hold them by virtue of their right of stoppage *in transitu*.   The facts, which were found by the court, are stated in the opinion.

*Harry G. Sargent* and *Albin & Martin,* for the plaintiffs.   I. The rule of law is generally stated to be, that the vendor's right of stoppage *in transitu* continues until the goods have reached their ultimate destination, and come into the actual possession of the vendee.   *Mohr* v. *Boston & Albany R. R. Co.*, 106 Mass. 70, and cases cited.   The arrival of the goods at the place of destination will not defeat the vendor's right to take them.   That right will only be terminated by the goods passing into the actual or the constructive possession of the vendee.   Hence the inquiry in such cases must always be, Have the goods passed into the possession of the purchaser?

In *Reynolds* v. *Railroad*, 43 N. H. 580, goods shipped from Dover arrived at Boston, and the consignee called for them, paid the freight, and received a delivery check, and would have received

actual possession of the goods if there had not been other freight in the way that prevented it; yet the court held that the *transitus* was not ended, and that the vendor could stop the goods. *Bell,* J., delivering the opinion, says,—" There is no constructive possession on the part of the vendee, unless the relation in which the carrier stood before, as a mere instrument of conveyance to the appointed place of destination, has been altered by a contract between the vendee and the carrier that the latter should hold or keep the goods as the agent of the vendee." To this point counsel cited and commented on *Inslee* v. *Lane,* 57 N. H. 454; *Seymour* v. *Newton,* 105 Mass. 272; *Grout* v. *Hill,* 4 Gray 361; *Morris* v. *Shryock,* 50 Miss. 599; *Calahan* v. *Babcock,* 21 Ohio St. 281; *Smith* v. *Railroad,* 27 N. H. 86; *Allen* v. *Mercier,* 1 Ashm. 103; *Reynolds* v. *Railroad,* 43 N. H. 580; *McFetridge* v. *Piper,* 40 Iowa 627; *Alsberg* v. *Latta,* 30 Iowa 442.

The existence of the carrier's lien for unpaid freight raises a strong presumption that the carrier continues to hold the goods as carrier and not as warehouseman; and in order to rebut this presumption there must be proof of some arrangement or agreement between the buyer and the carrier whereby the latter, while retaining his lien, becomes the agent of the buyer to keep the goods for him. 2 Benj. Sales 1090.

If the possessor of the goods has the intention to hold them for the buyer, and not as an agent to forward, and the buyer intends the possessor so to hold them for him, the *transitus* is at an end; but I apprehend that both these intents must concur, and that neither can the carrier, of his own will, convert himself into a warehouseman, so as to terminate the *transitus,* without the agreeing mind of the buyer (2 M. & W. 623), nor can the buyer change the capacity in which the carrier holds possession without his assent, at least until the carrier has no right whatever to retain possession against the buyer. *Jackson* v. *Nichol,* 5 Bing. N. C. 508; Blackburn Sales 248.

II. Delivery of part of the goods does not operate as a constructive delivery of the whole, unless the parties intended it so to operate; and it rests with the party who relies on the part delivery as a constructive delivery of the whole to prove such intention. 2 Benj. Sales, 1092, 1093; *Ex parte Cooper,* 11 Ch. Div. 68; *Ex parte Falk,* 14 Ch. Div. 455; Whitaker Stoppage in Transitu 152; Story Sales 285; Addison Cont. 494; *Tanner* v. *Scovell,* 14 M. & W. 28; *Buckley* v. *Furniss,* 15 Wend. 137—S. C., 17 *id.* 504; 1 Smith L. Cas. 903; *Secomb* v. *Nutt,* 14 B. Mon. 324; 5 Wait Act. and Def. 617.

By the civil law the lien prevailed even as against actual possession by the vendee. Dig., *lib.* 18, *tit.* 1, L 19.

The doctrine, which is applied in cases of contracts within the statute of frauds, and some other contracts, that a part delivery of goods sold under an entire contract operates in law as a construc-

tive delivery of the balance, does not apply in cases of stoppage *in transitu*, for the exercise of the right of stoppage *in transitu* is not a recission of the contract of sale.    *Wentworth* v. *Outhwaite*, 10 M. & W. 452, and cases cited.    It is a lien for the purchase-money, and no doctrine of the entirety of contracts need affect the question, as in ordinary cases of contracts.    The lien in principle differs in no way from the ordinary lien of a carrier for freight.    And it has been held, in cases of carriers' liens, that the delivery of a portion of goods shipped under an entire contract does not operate in law as a delivery of the balance, so as to divest the carrier of his lien for freight.    *N. H. & N. Company* v. *Campbell*, 128 Mass. 104; *Potts* v. *N. Y. & N. E. R. R. Co.*, 131 Mass. 455.

The rule deducible from the authorities is, that in cases of stoppage *in transitu*, the court will leave each party in the situation it finds them,—the vendee to retain the possession of the goods he has reduced to his actual possession, and the vendor to retain the goods that are in the actual possession of the carrier, without reference to the fact that all the goods were shipped under an entire contract.

The right of stoppage *in transitu* is one highly favored in law, being based upon the plain reason of justice and equity, that one man's property should not be applied to the payment of another man's debt.    5 Wait Act. and Def. 612; *Gibson* v. *Carruthers*, 8 M. & W. 337; *Inslee* v. *Lane*, *supra* 458, and cases cited.

*David F. Dudley ( Chase & Streeter* with him), for the defendant.    All the authorities hold that the right of stoppage *in transitu* must be exercised while the goods are in transit, as is implied *ex vi termini ;* and that the goods are *in transit* till they come to the actual or constructive possession of the vendee.

Actual possession is where the vendee takes the whole, or a part, with the intention of exercising the right of ownership over all. *Tanner* v. *Scovell*, 14 M. & W. 28; Benj. on Sales, *ss.* 805, 857; *Jones* v. *Jones*, 8 M. & W. 431; *Foster* v. *Frampton*, 6 B. & C. 107.    The taking of a part determines the right of stoppage *in transitu* as to the balance remaining in the hands of the carrier *qua* carrier.    Smith L. Cas. 1218 (*905).    Some cases may support the further condition as necessary to defeat the right, where the carrier holds the undelivered balance *qua* carrier, that there should be a contract express or implied to hold for the vendee, as there must be to determine the right when the carrier has not fully performed his contract of carriage.    *Whitehead* v. *Anderson*, 9 M. & W. 518; *Reynolds* v. *Railroad*, 43 N. H. 580.

They come to the constructive possession of the vendee when the carrier has fully performed his contract for carriage by bringing them to the place where the vendee is to receive them, either into his own actual possession, or start them on a new and independent journey, and the vendee has actual or constructive notice of their

arrival at such place, and after such notice a reasonable time in which to remove them. After such notice and the expiration of such time, the carrier becomes a warehouseman, and holds the goods as such for the vendee. *Kendall* v. *Marshall*, 16 Reporter 511; *Moses* v. *Railroad*, 32 N. H. 523; *Smith* v. *Railroad*, 27 N. H. 95; *Jewell* v. *Railway*, 55 N. H. 91, 92; *Brown* v. *Railway*, 54 N. H. 538; *Wentworth* v. *Outhwaite*, 10 M. & W. 436; *Sawyer* v. *Joslin*, 20 Vt. 172; *Dodson* v. *Wentworth*, 4 M. & G. 1080.

There are these apparent exceptions to this principle : When the vendee has absconded *(Inslee* v. *Lane*, 57 N. H. 454), does not intend to receive the goods *(Ex parte Cooper*, 11 Ch. Div. 68), and where the goods must psss through revenue officers' hands. The nature of these apparent exceptions is some element in the case that renders delivery impossible. *Reynolds* v. *Railroad, supra* 591. ·

CLARK, J. The right of stoppage *in transitu* exists until the goods are delivered to the buyer, or possession actual or constructive is taken by him. The goods were sold by the plaintiffs to Sanborn at Boston, and sent to him at Penacook, N. H., by railroad, by three different shipments, arriving there October 10th, 25th, and 28th. A part of each shipment had been taken from the freight station by Sanborn before his failure, November 5th, when the residue was attached by this defendant on a writ against Sanborn, and replevied by the plaintiffs. No part of the freight had been paid. October 26, after a part of the goods had been taken, the station agent demanded the freight, and upon Sanborn's neglecting to pay it, the agent determined to hold the remainder of the goods for the payment of the freight, but did not inform Sanborn of his intention.

No part of the goods was formally delivered to Sanborn. The rule of the railroad, known to Sanborn, required the payment of freight before the goods were delivered; but prior to the reception of the goods in controversy, the agent had allowed him, after goods consigned to him were deposited in the freight-house, to take a part or all without any formal delivery, intending to collect the freight while goods of sufficient value to secure it remained in the possession of the railroad; but this was not always done, as he had previously paid his freight bills promptly on demand. Occasionally Sanborn left his goods in the depot a few days after he had paid the freight. The goods were together at the freight station, and the agent knew when Sanborn took away a part of each of the three shipments, and made no objection.

The goods had reached their ultimate destination, and according to the previous and customary course of dealing were so far within the control of the consignee that he was at liberty to take away any that he chose, and he had taken away a part of each shipment. The selection of the goods removed was not determined or controlled by any restriction upon the consignee's right of removal. The goods remaining at the freight station were left there, not because

of the consignee's neglect or refusal to accept or his inability to take them (*Inslee* v. *Lane*, 57 N. H. 454, *Reynolds* v. *Railroad*, 43 N. H. 580), but because he did not choose to remove them at that time. They were left voluntarily and temporarily, as a matter of convenience to the consignee. By the previous course of dealing the rule of the railroad requiring payment of freight as a condition precedent to delivery had been waived, and Sanborn had been allowed to use the freight station for the temporary storage of goods consigned to him, taking them away as he wanted them. A portion of the goods had been at the station nearly a month, and the last shipment arrived eight days before the attachment. The railroad allowed the goods to remain there for Sanborn's accommodation, holding them as his agent and not as carrier. Its duties and its liabilities as carrier and insurer had terminated, and its responsibility was that of warehouseman only. *Moses* v. *Railroad*, 32 N. H. 523 ; *Smith* v. *Railroad*, 27 N. H. 86. The customary course of dealing is presumed to continue, and both the carrier and the consignee must have understood that the goods remained at the freight station as the goods of the consignee, at his risk and subject to his order and control, notwithstanding the undisclosed purpose of the agent, at the time of the attachment, to hold the balance of the goods until the freight was paid. " The carrier's change of character into that of an agent to keep the goods for the buyer, is not at all inconsistent with his right to retain the goods in his custody till his lien upon them for carriage or other charges is satisfied. Nothing prevents an agreement by the master of a vessel or other carrier to hold the goods after arrival at destination as agent of the buyer, though he may at the same time say, I shall not let you take them till my freight is paid." Benj. Sales (4th Am. ed.) *s.* 1270.

If the existence of a carrier's lien, without other evidence, authorizes an inference that he holds the goods as carrier and not as warehouseman, such an inference is controlled and rebutted in this case by the previous course of dealing between the carrier and the consignee. The capacity in which the railroad held the goods is a question of fact, that might depend largely or wholly upon the understanding and intention of the railroad and Sanborn (Benj. Sales, *ss.* 1264, 1270), and could have been properly determined at the trial term in favor of the defendant. As to some or all of the goods, there may be a question whether there is any evidence of a right of stoppage *in transitu*, and whether a decision in favor of the plaintiffs could be sustained. The case having been submitted for such judgment as should be ordered at the law term, there being no conflict of evidence, and it being clear that the *transitus* was at an end when the attachment was made, there seems to be no occasion for another trial.

*Judgment for the defendant.*

BINGHAM, J., did not sit : the others concurred.